IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-1242

_____

**FILED**

**June 18, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE:  Haylea G.

_____

Appeal from the Circuit Court of Fayette County
The Honorable John W. Hatcher Jr., Judge
Civil Action No. 08-CIGR-5-H

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED WITH
DIRECTIONS

_____

Submitted: June 4, 2013
Filed: June 18, 2013

David S. Hart, Esquire
Hayden & Hart, PLLC
Beckley, West Virginia
Counsel for Petitioner

Anthony J. Ciliberti, Jr., Esq.
Ciliberti Law Office, PLLC
Fayetteville, West Virginia
Guardian ad litem for Haylea G.

Amber B.
Fayetteville, West Virginia
*Pro se*

Justin G.
Oak Hill, West Virginia
*Pro se*

The Opinion of the Court was delivered PER CURIAM.
JUSTICE KETCHUM concurs, in part, and dissents, in part, and reserves the right to file
a separate opinion.

SYLLABUS BY THE COURT

1.      "A psychological parent is person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support.  The psychological parent may be a biological, adoptive, or foster parent, or any other person.  The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian.  To the extent that this holding is inconsistent with our prior decision of In the interest of Brandon L. E., 183 W. Va. 113, 394 S.E.2d 515 (1999) that case is expressly modified."  Syl. pt. 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005).

2.      "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. pt. *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996):

3.      "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant

i

child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syl. pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

4.    "A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syl., *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

5.    "While courts always look to the best interests of the child in controversies concerning his or her custody, custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care." Syl. pt. 3, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118 (1975).

Per Curiam:

This case arises from a guardianship proceeding in the Circuit Court of Fayette County. The petitioner, Sybil J.[1], is the court-appointed guardian of Haylea G., who is eight years old. The respondents are Amber B. and Justin G., Haylea G.'s biological parents. By order entered September 21, 2012, the Circuit Court of Fayette County terminated the infant guardianship between Sybil J. and Haylea G. The circuit court also ordered Sybil J. to return certain funds paid to her by the Social Security Administration on behalf of Haylea G. and imposed a monetary sanction for each day the funds were not returned. After a careful review of the pleadings and record designated for review, the briefs and oral arguments of the parties, and for the reasons stated herein, we affirm the order as it relates to the termination of Sybil J.'s guardianship of Haylea G. We reverse the circuit court insofar as it ordered the return of funds and imposed a monetary sanction against Sybil J.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Haylea G. is the now eight-year-old child of Amber B. and Justin G. Since Haylea G. was two years old and until the entry of the order being appealed she resided in the home of the petitioner, Sybil J., pursuant to an infant guardianship entered by the

_____

[1] We follow our traditional practice of protecting the identity of juveniles and their family members by using initials for their surnames.

1

circuit court on May 1, 2008. The guardianship was established shortly before Amber B., the child's mother, went to prison for fraudulent use of a credit card and related misdemeanors.[2] Sybil J. was a friend of Amber B.'s family. At all times Justin G., the father of Haylea G. agreed that Sybil J. was an appropriate caregiver and guardian for his child. Amber B. objected to the establishment of the guardianship and requested that the child be placed with Justin G.'s mother. Despite this objection, the circuit court found that Sybil J. was a fit and proper person to perform the duties of guardian for Haylea G.

In 2010, in a related but separate proceeding, the Family Court of Fayette County ordered Amber B. to pay child support to Sybil J. for Haylea G. No child support award was entered against Justin G., but in May of 2012, the Social Security Administration ("SSA"), on behalf of Haylea G., awarded to Sybil J. monthly benefits derived from Haylea G.'s father's disability award.[3] In addition, SSA awarded back benefits in the approximate amount of $9,000.00 to Haylea G. Because Haylea G. was a minor, the SSA designated Sybil J. as the child's payee for past and future benefits.[4]

---

[2] Amber B.'s original sentence was suspended and she was placed on probation pursuant to a plea agreement. While on probation, however, she violated the special conditions of her sentence by possessing controlled substances. As a result, her probation was revoked and a prison sentence was imposed.

[3] Social Security benefits are payable to dependent children of persons eligible for disability insurance. 42 U.S.C.A. § 423 (2004).

[4] The procedure for appointing a representative payee is contained in 42 U.S.C.A. 405(7)(A) (2010).

2

Sybil J. testified that she used part of this money to repay a personal loan and placed the rest of the funds in a checking account in Sybil J.'s name.

In February of 2011 Amber B. was discharged from parole supervision. At that time Haylea G. was still residing with Sybil J. In November of 2011 Amber B. filed a handwritten letter with the court, seeking a termination of the guardianship of Sybil J. over Haylea G. In her letter, Amber B. stated as follows:

> I Amber B[.] am requesting custody back of my daughter Haylea J[.] G[.] who is in Sybil J[.]'s custody and has been since June 2008. I have been home from incarceration since January of 2010 & have completed my parole with no violations or incidents. In the time that I have been home my two older children Michael A[.] W[.] & Ashlea R[.] G[.] who are still in Tammy G[.]'s custody, but Ashlea now lives with me and Michael is with me every weekend & lived with me over the summer of 2011. I have only got to see Haylea very few times since I have been home, it seems that everytime I try to see her Sybil J[.] has given excuses for me not to see her. All I want is to be back in Haylea's life & to be in her brother & sister's life because Haylea doesn't ever get to see them either and I believe it's only right for us to be a family again. I am very capable of taking care of my children & providing for them with any of their needs. Please take this into consideration and grant me custody of my child, Haylea J[.] G[.]

A hearing was held in March of 2012, at which time Sybil J. objected to the return of the child to Amber B., arguing that Amber B. had not addressed the problems, including her continued use of drugs, which led to the need for the establishment of the guardianship. The circuit court took testimony and found that Amber B. was working,

3

was participating in drug rehabilitation and also other counseling, including the use of Suboxone under medical supervision for the treatment of her drug addiction. The circuit court found that Amber B. had been living with her nine-year-old daughter as well as Amber B.'s mother in Fayetteville since January of 2010. The circuit court further found that Amber B.'s 11-year-old son stayed with his mother, grandmother and sister on weekends. [5] The court found that Amber B. earned money by babysitting for a friend. The court further ordered that the Department perform a study of Amber B.'s home.[6] The hearing was continued. On April 23, 2012, a guardian ad litem was appointed to protect Haylea G.'s interests.

The circuit court reconvened this hearing in June of 2012, at which time Sybil J. argued that Amber B. had not really improved her lifestyle and living conditions. Sybil J. proffered the testimony of three witnesses, including two of Haylea G.'s teachers and a friend of the Sybil J. These witnesses would have testified that the child was doing

---

[5] At a later hearing the Court heard testimony that Amber B. had regained custody of both of Haylea G.'s siblings.

[6] The order also contains findings regarding the testimony of an employee of the Department, who need not be identified for the purposes of this opinion, who appeared at the hearing in a seemingly official capacity and sat with Sybil J. during the hearing. The court appeared to have been acquainted with this person. When the court questioned this person about her involvement in this case, she revealed that she was a relative of Sybil J. and appearing not in her official capacity as a worker for the Department, but in a supportive role. The court found that it was "extraordinarily inappropriate, unprofessional and misleading" for this relative to speak favorably about the condition of Sybil J.'s home.

4

well in school and that Sybil J. was better able to care for, and provide for, Haylea G. The court assumed that the child was doing well and remarked that some of the witnesses' testimony about how Haylea G. was doing in the home of Sybil J. would be deemed cumulative.

The guardian ad litem filed a detailed report of his investigation. He found that Sybil J. became involved in Haylea G.'s life when the child was only three months old. Her care for the child increased and included overnight care. The guardian ad litem found that in January of 2007, Haylea G. began living primarily with Sybil J. The guardian ad litem reported that Amber B. had completed her parole, but that prior to being discharged from supervision, she relapsed into drug use. The guardian ad litem reviewed records from Amber B.'s medically supervised drug rehabilitation and reported that she did not appear at present to be using controlled substances. The guardian ad litem interviewed acquaintances of Amber B. who likewise believed that she was no longer using controlled substances. The guardian ad litem found no problems with Amber B.'s residence.

In terms of the relationship between Amber B. and Sybil J., the guardian ad litem reported that Sybil J. had placed conditions on Amber B.'s contact with Haylea G., including requiring that visitations occur at Sybil J.'s residence and involve no other persons, including Haylea G.'s siblings. As a result, contact between Amber B. and Haylea G. was infrequent.

5

The guardian ad litem reviewed medical records regarding the child's psychological treatment. He also interviewed the child, whom he deemed to be bright, intelligent, well-spoken, polite and mature for her age. He reported that the child enjoyed living with Sybil J. and wanted to remain in her care. He expressed "great concern" in his report to the court when he asked Haylea G. about her mother. He found that Haylea G.'s answers to the questions appeared to have been coached. The child told the guardian ad litem that she knew her mother used drugs and was trying to take her away from Sybil J. The child stated that she did not want to live with her mother because she smoked. Haylea G. admitted that Sybil J. was the source of her information about her mother.

The guardian ad litem recommended that the guardianship continue, as Sybil J. and Haylea G. had an established bond. He opined that it was in the best interests of the child to remain with Sybil J. and recommended that the guardianship be continued, but that a specific visitation scheduled should be created for Amber B. and Haylea G.

A caseworker for the Department performed a study of Amber B.'s home, and found it to be an appropriate placement for Haylea G. The home was found to be clean, in good repair and a suitable place for Haylea G., her siblings and her mother to live. She also testified that there had been no reports of child neglect or abuse involving Amber B. since she received custody of Haylea G.'s siblings. This caseworker testified

6

that she believed in some respects it was apparent that Haylea G. had been prepared to speak to the caseworker. She reported that the child told of two incidents involving abuse at the hands of Amber B., but gave them little credibility.[7] This witness testified that while it was apparent that the child was well cared for by Sybil J., she saw no problems in the home of Amber B. or in her ability to care for Haylea G.

By order dated September 21, 2012, the circuit court found that Amber B. had corrected the problems that created the need for the guardianship in this case. The court found that Amber B. was now a fit and proper person to care for her child, and thus, was an appropriate caregiver. The court found that it was in Haylea G.'s best interests to be raised in a home with her siblings, by her mother, and the court terminated Sybil J.'s guardianship of the child. The circuit court concluded that in matters of appointing guardians for minor children, the parents of those children should be given priority. The circuit court further concluded that the right of a natural parent to custody of his or her child is paramount to any other person's right. While the order acknowledged that Sybil J. may well be perceived to be a psychological parent to Haylea G. as the term is defined by this Court,[8] the circuit court concluded that this did not extinguish the paramount right

---

[7] The caseworker believed that these events, if true, would have happened well before the child went to live with Sybil G. at a very young age.

[8] We have defined the phrase "psychological parent" as follows:

> A psychological parent is person who, on a continuing day-to-day basis, through interaction, companionship, interplay,

(continued . . .)

of Amber B. to raise her daughter. The order further detailed a schedule of visitation between Amber B. and the child and a plan for reunification of Haylea G. into Amber B.'s home. In addition, the order was stayed by the circuit court until December 21, 2012, so that appellate review could be taken. This stay was modified by order entered November 5, 2012, such that the stay would remain in effect until the present appeal was concluded. The visitation components of the earlier orders remained in full force and effect.

The court also addressed the Social Security disability benefits for Haylea G., including the award of back benefits. The court found that Sybil J.'s "receipt, banking and expenditure of her ward's recent Social Security Administration award of approximately $9,000.00, or more, was shocking, if not criminal." The court criticized Sybil J.'s commingling of these funds with her personal money and Sybil J.'s use of the

and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In the interest of Brandon L. E.*, 183 W. Va. 113, 394 S.E.2d 515 (1999) that case is expressly modified.

Syl. pt. 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005).

8

funds to repay a loan used to retain an attorney to defend Amber B.'s request for termination of the guardianship. The court ordered that Sybil J. pay to the guardian ad litem by the court all monies she received, and continued to receive on behalf of Haylea G., including the lump sum back pay award.

From this order Sybil J. pursues this appeal.[9]

## II.

## STANDARD OF REVIEW

In *In Re: Beth Ann B.*, 204 W.Va. 424, 513 S.E.2d 472 (1998), this Court indicated that in a child abuse and neglect case the Court employs the two-pronged standard of review set forth in Syl. pt. of *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996):

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard,

---

[9] Subsequent to the entry of the order on appeal, the circuit court held another hearing on January 11, 2013, to address the repayment of the Social Security benefits. At this time Sybil J. was found in contempt for her failure to provide the approximately $9,000.00 in Social Security proceeds to the child's guardian ad litem. She was assessed a $100 per day monetary penalty for each day she failed to turn over the funds. That order is not directly on appeal to this Court but our ultimate conclusion of the present appeal renders the subsequent order moot.

and we review the circuit court's underlying factual findings under a clearly erroneous standard.

With this standard of review in mind, we turn to the assigned errors.

## III.

## ANALYSIS

The petitioner assigns three grounds for error in these proceedings. First, the petitioner argues that the circuit court abused its discretion by terminating the guardianship. She argues that during the over five years the guardianship was in existence, she and Haylea G. developed a significant psychological bond. She also argues that it was an abuse of discretion for the circuit court to go against the stated recommendation of the guardian ad litem in maintaining this guardianship, that the best interests of the child mandated a continuation of the guardianship and that the circuit court failed to give her a meaningful opportunity to be heard.

Secondly, the petitioner argues that the court improperly found that she was not entitled to receive Social Security benefits, including a back pay award, for the child. The third assignment of error is that the circuit lacked subject matter jurisdiction to consider the reimbursement of the Social Security award. For the purposes of this opinion the second and third assignments of error are consolidated.

10

While the court found in 2008 that the guardianship was necessary and furthered the best interests of Haylea G., that order is subject to modification. W. Va. Code § 44-10-3(c) (2006) states,

> The court, the guardian or the minor may revoke or terminate the guardianship appointment when:
>
> (1) The minor reaches the age of eighteen and executes a release stating that the guardian estate was properly administered and that the minor has received the assets of the estate from the guardian;
>
> (2) The guardian or the minor dies;
>
> (3) The guardian petitions the court to resign and the court enters an order approving the resignation; or
>
> (4) A petition is filed by the guardian, the minor, an interested person or upon the motion of the court stating that the minor is no longer in need of the assistance or protection of a guardian.[10]

(Footnote added). The circuit court treated Amber B.'s handwritten letter as a petition by "another interested person" for termination of the guardianship because there was no longer a need for the guardianship to continue, pursuant to W. Va. Code § 44-10-3(c)(4) (1999).

The petitioner argues that the circuit court wrongfully ignored the bond established since 2008 between Haylea G. and Sybil J. and elevated the rights of Amber

---

[10] The language of this statute is substantially similar to Rule 15 of the Rules of Practice and Procedure for Minor Guardianship Proceedings.

11

G. over those of the child. We disagree. In all instances the right of a fit parent to raise his or her children is a superior right to any other person's claim.

> In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). Furthermore,

> A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960). Therefore, the court had the authority to modify the guardianship upon sufficient proof.

The record clearly reflects that under Sybil J.'s guardianship, Haylea G. flourished. The issue before the circuit court was whether Amber B. had made the necessary changes so that the guardianship of Sybil J. was no longer necessary. The guardian ad litem and Sybil J. both argue that it is in the child's best interest to remain in the guardianship of Sybil J., because of how well the child is doing and because of the bond established between the two. The circuit court recognized and found, however, that

12

the ability for another person to provide for a child does not thereby render a parent unfit to raise her child.  We have held,

> While courts always look to the best interests of the child in controversies concerning his or her custody, custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care.

Syl. pt. 3, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118 (1975).

We find no clear error in the circuit court's findings of fact in this case. The circuit court clearly recognized the superior right of Amber B., as the child's mother, to custody of her child.  We find that the circuit court appropriately applied the applicable law to the facts of this case, without an abuse of its discretion, as it relates to the termination of the guardianship.  We therefore affirm the order of the circuit on the issue of the guardianship.

We next turn to the portion of the order that dealt with the Social Security monies.  The order mandated the return of $9,000.00 Sybil J. received from Social Security on behalf of Haylea G.  The circuit court ordered that the entire amount be transferred to the child's guardian ad litem, pending further action by the court.

Sybil J. asserts that the circuit court is devoid of subject matter jurisdiction to address child support in this matter, citing *Allen v. Allen*, 226 W. Va. 384, 701 S.E.2d 106 (2009), for the premise that the family court has "original and continuing

13

jurisdictions over matters of child support in domestic relations actions." *Allen*, 226 W. Va. 384 at ___, 701 S.E.2d 106 at ___.

However, this is not an instance where the circuit court was asked to establish, modify or enforce child support, all matters clearly within the specifically delegated jurisdiction of the family court and the concurrent jurisdiction of the circuit courts. Instead, the question deals with the use of funds awarded to Sybil J. on behalf of Haylea G. by a federal agency. The award was based upon existing federal statutes as well as federal administrative rules and regulations. Likewise, the use of the funds by Sybil J., as the representative payee for Haylea G., is based upon federal statutes and administrative rules and regulations.

The duties and responsibilities of the representative payee are contained in 20 C.F.R. § 404.2035 (2006). This section states,

> A representative payee has a responsibility to--
>
> (a) Use the benefits received on your behalf only for your use and benefit in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in your best interests;
>
> (b) Keep any benefits received on your behalf separate from his or her own funds and show your ownership of these benefits unless he or she is your spouse or natural or adoptive parent or stepparent and lives in the same household with you

14

or is a State or local government agency for whom we have granted an exception to this requirement;

(c) Treat any interest earned on the benefits as your property;

(d) Notify us of any event or change in your circumstances that will affect the amount of benefits you receive, your right to receive benefits, or how you receive them;

(e) Submit to us, upon our request, a written report accounting for the benefits received on your behalf, and make all supporting records available for review if requested by us; and

(f) Notify us of any change in his or her circumstances that would affect performance of his/her payee responsibilities.

Failure of the representative payee to properly handle the benefits received may lead to monetary sanction, criminal prosecution or both, according to 42 U.S.C. § 408(a)(5) (2006): "Whoever— . . . having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; . . . shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both."

We share the circuit court's concerns with the guardian's stated use of and accounting for Haylea G.'s benefits. These actions, as noted by the circuit court, may

have criminal or civil implications; however, we believe the circuit court acted outside of its jurisdiction when it determined that Sybil J. had wrongfully appropriated monies awarded to her by the SSA on behalf of Haylea G., and thus required the funds to be turned over to the guardian ad litem for further distribution by the circuit court. It is clear from the U.S.C. and the C.F.R. that the SSA is in the proper position to address this situation, either administratively or by referral to the appropriate authorities for prosecution under United States Code. The circuit court lacks jurisdiction to order that the funds be returned, or to mandate where they are to be distributed. As such, we reverse the portion of the circuit court's order that required Sybil J. to turn over the Social Security proceeds to the guardian ad litem. Although the subsequent order of the circuit court assessing a monetary penalty for each day that Sybil J. failed to give the funds to the guardian ad litem is not directly before us, we find that the order is moot in light of our reversal of the underlying requirement to return the funds.


# IV.

## CONCLUSION

For the foregoing reasons, the order of the Circuit Court of Fayette County entered September 21, 2012, is affirmed, insofar as the order terminated Sybil J.'s guardianship of Haylea G. The portions of the order requiring Sybil J. to turn over the proceeds of the Social Security award made to her on behalf of Haylea G. are reversed. We remand this case with directions to the Circuit Court to ensure that a reasonable

16

reunification and transition for Haylea G. is made from the home of Sybil J. to her mother's residence.

Affirmed, in part, and reversed, in part, and remanded with directions.