IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 16-0672

_____

IN RE: GUARDIANSHIP OF A.C.

FILED

**November 8, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael D. Lorenson, Judge
Civil Action No. 16-CIG-19

REVERSED AND REMANDED

_____

Submitted: October 11, 2017
Filed: November 8, 2017

Kimberley D. Crockett, Esq.
Crockett Law
Guardian ad Litem for A.C.
Falling Waters, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Lee Niezgoda, Esq.
West Virginia Department of Health and
  Human Resources
Fairmont, West Virginia
Counsel for the Respondents

Ashton Bias, Esq.
Lynn Ranson Law Offices
Charleston, West Virginia
Guardian ad litem for Father, K.W.

E.B., *pro se*
Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. Pt. 1, *McCormick v. Allstate Ins. Co.,* 197 W. Va. 415, 475 S.E.2d 507 (1996).

2. "'''The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).' Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008)." Syl. Pt. 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011).

3. "Pursuant to the plain language of W. Va. Code § 44-10-3(a) (2006) (Supp. 2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian. In appointing a guardian, the court shall

give priority to the minor's mother or father. 'However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.' W. Va. Code § 44-10-3(a)." Syl. Pt. 6, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008).

Workman, Justice:

This is an appeal by a twelve-year-old girl, A.C.,[1] through her guardian ad litem, Kimberley D. Crockett (hereinafter "the Petitioner"). The Petitioner contends the Circuit Court of Berkeley County erred in awarding guardianship of A.C. to her grandmother, A.H. The Petitioner argues the circuit court's placement of A.C. is not in her best interests and fails to include an appropriate evaluation of the Guardianship Screening Factors enumerated in Rule 10 of the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings. Upon this Court's review of the parties' arguments, the record presented for appellate consideration, and pertinent authorities, we reverse the decision of the circuit court and remand this case for further proceedings consistent with this opinion.

## I. Factual and Procedural History

The child's mother, T.C., died of a heroin overdose in the presence of the child on February 24, 2016. In March 2016, E.B., the godmother of A.C. and a resident of Florida, filed a petition for guardianship of A.C. The mother and E.B. had been friends since childhood, and the mother and child had lived with E.B. in 2005-06 and again in 2015. E.B.'s request for guardianship included a "Temporary Guardianship Agreement" executed

---

[1]Based upon the sensitive facts of this case, we protect the identities of those involved by using initials rather than full names. *See State ex rel. West Virginia Dep't of Hum. Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); *see also* W.Va. R. App. P. 40.

1

by A.C.'s mother in August 2012, naming E.B. as A.C.'s custodian "[f]or as long as necessary." E.B. testified that the mother had executed the agreement to provide for A.C.'s care and that "[i]f anything ever happened to her, she wanted me to take care of [A.C.]." According to the "Report and Recommendation of Guardian ad Litem," the child's father also contacted E.B. immediately after the death of the child's mother requesting that she seek custody of the child. E.B. left Florida to come to West Virginia within hours of the mother's death.

A.C.'s father, K.W., did not know of her existence until she was five years old and was incarcerated for most of her life. He was released from prison in 2016 after serving a sentence of eight and one-half years for conspiracy to deliver a controlled substance. After her mother's death in 2016, A.C. lived in a home with her grandmother A.H., great-grandparents, and another man who was a boyfriend of A.C.'s aunt and a registered sex offender.

On March 8, 2016, the Petitioner was appointed as guardian ad litem for the child, and the Department of Health and Human Resources (hereinafter "the DHHR") received a referral from the circuit court, providing as follows: "Court ordered assessment, 16-JAA-18, Mother notarized temporary guardianship in 2012. Mother is deceased and child's father is incarcerated." According to the DHHR, it completed a family functioning

assessment focusing on the biological father and the petitioning godmother, E.B.  It found

no maltreatment by the father and found that appropriate provisions had been made for the

care of the child in the father's absence.  The DHHR had no further involvement in the case

until it received a referral from the Petitioner in October 2016 regarding possible drug abuse

in the home, and it did not ultimately find any maltreatment of the child.

The child's grandmother, A.H., also filed a petition seeking guardianship of

the child on March 14, 2016.  In her petition, she included a "Temporary/Permanent

Guardianship Agreement" in which A.C.'s father, while still in prison, had granted

guardianship rights of A.C. to her grandmother, A.H., with specified dates of March 20,

2016, to December 12, 2016.

Subsequent to extensive investigation in her role as guardian ad litem, the

Petitioner recommended that the child be placed with E.B., the godmother, with whom the

child had previously lived for substantial periods of time.  The Petitioner based her

recommendation, in part, upon the Guardianship Screening Factors enumerated in Rule 10

of the Rules of Practice and Procedure for Minor Guardianship Proceedings.[2]  The Petitioner

---

[2]Rule 10 of the West Virginia Rules of Practice and Procedure for Minor
Guardianship Proceedings provides specific Guardianship Screening Factors to be utilized
in ascertaining appropriate placements.  The rule provides as follows:

The court, when determining an appropriate guardianship appointment over

found that A.H. would not be a fit guardian for the child based upon various concerning factors such as A.H. permitting a sex offender to reside in the home with her and the child; abusing alcohol, driving on a revoked license subsequent to two DUI convictions; driving while intoxicated; and permitting other family members who abused illegal substances to live in the home.

On April 27, 2016, the circuit court held an evidentiary hearing and conducted an in-camera interview with A.C. and the Petitioner. A.C., age eleven at that time,[3] informed

---

the person of a minor, shall ascertain and consider, among other pertinent matters, whether any proposed guardian:

1) Is required to register as a sex offender under West Virginia Code, Chapter 15, Article 12;

2) Has a record of any misdemeanor or felony convictions;

3) Has ever been subject to a restraining order or final protective order;

4) Has ever been the subject of any substantiated report alleging child abuse, neglect, or molestation made to any child protection agency, other law enforcement agency, or court in any jurisdiction;

5) Habitually uses any illegal substances or abuses alcohol; or

6) Has another person living in the home that involves any of the matters stated above.

W.Va. R. Prac. & P. Minor Guardianship Proc. 10.

[3]This Court has observed the rights of children to express their preferences in certain situations. In syllabus point two of *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176 (1985), this Court held:

4

the circuit court that she had been repeatedly and frequently exposed to alcohol and drug abuse in A.H.'s home and that A.H. was "drunk all the time," allowed drug use in the home, and had not attempted to prevent A.C.'s mother from abusing drugs. A.C. specifically stated that she did not want to live in the home with A.H. because her mother had died in the home and the family abused drugs there. She further explained she would prefer to live with E.B., felt safe in E.B.'s home, had previously attended school there, and had personal possessions in E.B.'s home. A.C. informed the circuit court that A.H. had pressured her to testify that she wanted to remain with A.H. in West Virginia. A.C. also testified that her grandmother drove a vehicle while intoxicated.

A.C.'s cousin, J.S., age nineteen, testified that A.H. was not a fit parent and had physically attacked J.S. after she read a report by the Petitioner regarding A.H.'s alleged unfitness for guardianship. J.S. also testified that she had witnessed A.H. driving her vehicle with the child in the car on multiple occasions, despite her loss of a drivers' license based upon her DUI convictions.

---

"Where there is a child under fourteen years of age, but sufficiently mature that he can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted." Syl. pt. 7, *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981).

5

On June 14, 2016, the circuit court awarded guardianship of the child to the grandmother, A.H., over the objection of the Petitioner. The circuit court noted that the child would be permitted to maintain contact with E.B. through the use of her cell phone. Observing that the registered sex offender had moved out of the grandmother's home, the circuit court further held that the child "is 11, and permanence and distance to Florida is unrealistic and looking at the long term, the least amount of harm will be placed upon the child if she remained with family in Martinsburg. She lived in Florida only a couple months and then only with her mother."

The circuit court also stated the DHHR had not made a finding of abuse by the grandmother, the father wanted the child placed with family, E.B. lives over a thousand miles away, and it

> would create an unreasonable burden on the biological father and given that no guardian ad litem had been appointed to permit the respondent father to attend [the hearing], the only final result that could be achieved in this hearing would be to award guardianship consistent with the wishes of the biological father.

During the course of the proceedings, grandmother A.H. requested that a guardian ad litem be appointed for the father. The circuit court noted the request and responded: "[the] request for a Guardian ad Litem on behalf of [the father] is taken under advisement pending decision on the merits given the distance that the original petitioner [E.B.] traveled to attend the

hearing and given than [sic] the Respondent Father did express his preference in writing."

The circuit court did not ultimately appoint a guardian ad litem for the father.

On October 24, 2016, the Petitioner filed an appeal with this Court, contending that the circuit court's award of guardianship to the grandmother, A.H., was not in the child's best interests and should be reversed.[4] While this appeal was pending, the child's father filed a petition for termination of the grandmother's guardianship. In September 2017, this Court entered an order finding that the circuit court no longer had jurisdiction over matters involved in this case because this Court had assumed jurisdiction. Further, this Court appointed Ashton Bias to represent the father's interests. On October 4, 2017, Ashton Bias, as guardian ad litem for the father, filed a brief indicating that the father agreed with the placement with the grandmother during the circuit court proceedings below. He alleged, however, that the circuit court abused its discretion in failing to appoint a guardian ad litem for the father to allow him to be actively involved in the proceeding below.

## II. Standard of Review

[4]The grandmother, A.H., did not make an appearance or file any briefs with this Court. The godmother, E.B., appeared pro se before this Court during oral argument and has indicated her desire to join the Petitioner in arguing that the circuit court erred in awarding guardianship to the grandmother. While not included in the record, reference was made to a home study of E.B.'s residence in Florida, indicating that her home would be fit for the child.

7

In syllabus point one of *McCormick v. Allstate Insurance Co.,* 197 W. Va. 415, 475 S.E.2d 507 (1996), this Court held:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

We have also held the standard of review applicable to custody decisions, including guardianship decisions, is as follows:

> "'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989)." Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008).

Syl. Pt. 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011). With these standards as guidance, this Court addresses the arguments of the parties.

III. Discussion

The standards governing the appointment of guardians for minors are enumerated in West Virginia Code § 44-10-3 (2014). West Virginia Code § 44-10-3(h) provides, in relevant part, that "in every case the competency and fitness of the proposed

8

guardian must be established and a determination made that the appointment is in the best interest of the child." Addressing the requirements of the statute,[5] this Court explained as follows in syllabus point six of *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008):

> Pursuant to the plain language of W. Va. Code § 44-10-3(a) (2006) (Supp. 2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian. In appointing a guardian, the court shall give priority to the minor's mother or father. "However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian." W. Va. Code § 44-10-3(a).

We further evaluated the statutory scheme in *Antonio R.A.*, noting as follows: "West Virginia Code § 44-10-3 grants authority to family and circuit courts to appoint guardians for minors and gives courts discretion in determining when such appointments are necessary and who to appoint as a guardian in an individual case." 228 W.Va. at 387, 719 S.E.2d at 857. We observed the critical significance of an analysis of the best interests of the child in *In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015), reasoning as follows:

> This Court addressed these requirements in the specific context of a termination of guardianship in *In re Haylea G.*, 231 W.Va. 494, 745 S.E.2d 532 (2013), and has consistently required analysis of best interests and changed circumstances in matters involving custody of children. *Id.* at 498, 745 S.E.2d at 536. A

---

[5]West Virginia Code § 44-10-3 was rewritten subsequent to this Court's decision in *Abbigail Faye.* The significance of examination of the best interests of the child, however, remains a key component of the statute.

child's best interests have been heralded as the paramount consideration by which all custody determinations should be made. We have repeatedly held that "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) (internal citation omitted); *see also* Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children."); Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child.").

235 W.Va. at 259, 773 S.E.2d at 25.

In the instant case, the Petitioner contends the circuit court erred by failing to adequately evaluate the best interests of A.C. She asserts that the circuit court failed to properly analyze the Guardianship Screening Factors in its decision to grant guardianship of the child to the grandmother and also failed to provide appropriate consideration to the suitability of granting guardianship to the godmother, E.B. *See* W.Va. R. Prac & P. Minor Guardianship Proc. 10. The Petitioner emphasizes that the circuit court's hesitancy to award guardianship to E.B. was based upon her location in Florida, rather than any concern with her caretaking skills or other qualification issues.

This Court's review of the record reveals the child's well-reasoned, concise, and articulate expression of her preference to reside with E.B. Although a child's decision

10

is obviously not the only consideration in a determination regarding guardianship, the basis for this child's decision in this case reveals the profoundness of the difficulties inherent in the proposed placement in the grandmother's home. The grandmother allegedly abuses alcohol and possibly drugs, drives the child while inebriated, drives on a revoked license, smokes an unknown substance out of a soda can, and permits individuals with various and sundry drug and other issues to live in the home. When the child texted a photograph to the Petitioner of a container of what appeared to be marijuana, the Petitioner referred the case to child protective services and law enforcement. Officers investigating the grandmother's home located what appeared to be residue of marijuana, but no arrests were made. The child also reported that the grandmother confiscated her cell phone, allegedly because the child had revealed family matters to a social worker at school, and thereafter prohibited communication between the child and the Petitioner. According to updates filed by the Petitioner during the pendency of this appeal, the grandmother also allegedly prohibited the child from contacting E.B., despite the circuit court's ruling allowing such contact.

The Petitioner argues that the circuit court clearly disregarded this overwhelming evidence of unfitness and resolved the guardianship matter in a manner that does not serve the best interests of this child. Our review of the record reveals the accuracy of the Petitioner's assertions. While the circuit court's attempt to preserve a continued relationship with family members is laudable, the proximity and convenience for family

11

members does not take precedence over the best interests of the child. Moreover, the circuit court appears to have undervalued the Guardianship Screening Factors; those factors require courts to consider whether the proposed guardian has convictions, abuses drugs or alcohol, or has allowed a registered sex offender and drug abusers to live in the home. *See* W.Va. R. Prac & P. Minor Guardianship Proc. 10. Children have a substantial need for continuity of care and integration into safe, drug-free, permanent homes. Decisions regarding arrangements for guardianships and child custody are certainly some of the most challenging cases this Court encounters. There are no obvious answers to the questions posed in such crucial cases, and "[f]ormula[s] or computer solutions . . . are impossible because of the unique character of each case, and the subjective nature of the evaluations and decisions that must be made." *Taylor v. Taylor,* 508 A.2d 964, 967 (Md. 1986); *see also Waters v. Magee*, 877 A.2d 658, 664-65 (R.I. 2005) ("No one factor is determinative; rather, the trial justice should consider a combination of and an interaction among all the relevant factors." (citation and internal quotation marks omitted)).

We find that the circuit court erred in awarding guardianship of A.C. to her grandmother. The best interests of the child would be better served by awarding guardianship to E.B., and the Guardianship Screening Factors, when applied to the facts of record in this case, prominently indicate that the grandmother is not a viable candidate to serve as guardian to A.C. We consequently reverse the circuit court's decision and remand

this matter for entry of an order awarding guardianship to E.B. Furthermore, upon remand, the circuit court is charged with the task of fashioning an expedited transition of A.C. from West Virginia to her home with E.B. in Florida.[6] The emotional and educational needs of the child must be paramount, and all involved parties must cooperate to ensure the success of these new guardianship arrangements. Visitation among all family members and A.C. must also be arranged. As we have consistently explained, this is not an uncomplicated task, and all adults must collaborate and coordinate their efforts for the benefit of the child. "[I]t has been long understood that the law governing child custody directs that a child's best interests are best served by a gradual transition to a new home." *Kristopher O. v. Mazzone*, 227 W.Va. 184, 194, 706 S.E.2d 381, 391 (2011); *see also* syl. pt. 11, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996) ("A child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child."). Because the child is already well-acquainted with E.B. and has in fact lived in her home previously, such transition should be a very expedited one. The goal should be for A.C. to be relocated to E.B.'s care and custody at the end of her current school semester, if possible. The court, on remand, should also endeavor to fashion an order which contemplates visitation and/or continued relationship among family members, including the

---

[6]*See* W. Va. Code §§ 49-7-101 to -02 (2015) (outlining requirements of Interstate Compact on the Placement of Children, as also discussed herein).

13

grandmother and the father.

We further note that although A.C.'s father filed a petition to terminate the grandmother's guardianship during the pendency of this appeal,[7] the record is clear that he supported the circuit court's conclusions regarding the grandmother's guardianship while this case was pending in circuit court. In fact, he specifically granted the grandmother guardianship rights. The apparent basis for the circuit court's decision *not* to afford him representation through a guardian ad litem while he was imprisoned was the fact that his interests had already been made known through his execution of that document. Specifically, the circuit court noted that the father "did express his preference in writing." He "submitted his nomination of [the grandmother] in writing, and his interests aligned with [the grandmother]."[8] While we find that the better practice would have been to appoint a guardian ad litem for the imprisoned father, he was in no manner prejudiced by the circuit court's decision in this case and, in fact, the position he advocated prevailed below. If the father desires to seek custody of the child or modification in guardianship arrangements in the future, he may petition the lower court.[9]

---

[7]The father was released from incarceration in August 2016.

[8]The circuit court further reasoned: "Since the court ultimately concluded that [the grandmother's] petition would be granted, the court finds the procedural defect in failing to appoint a guardian *ad litem* for [the father] harmless."

[9]Although a biological parent's rights are significant, the circumstances here are unique. According to the Petitioner, the child has had a very limited relationship with her

Additionally, although the parties did not raise issues regarding the Interstate Compact on the Placement of Children [hereinafter "ICPC"], we note that the process of out-of-state placement of a child must comply with West Virginia Code §§ 49-7-101 to -02 (2015). That statute enumerates the requirements for out-of-state placement, and the circuit court, on remand, must incorporate those provisions into the process of placing A.C. in Florida with E.B. *See Kessel v. Leavitt*, 204 W.Va. 95, 162, 511 S.E.2d 720, 787 (1998). As set forth in West Virginia Code § 49-7-101, "the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein." W. Va. Code § 49-7-101. This includes financial responsibilities for the child, as explained in West Virginia Code § 49-7-102. Continued jurisdiction is also contemplated, as stated in Article V, section (a) of the ICPC:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. The jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient

---

father, based upon his incarceration for the majority of her life. He is allegedly currently living with friends and visits the child a few times per week. In her in camera interview with the circuit court, the child was adamant that she did not want to reside with the father.

to deal with an act of delinquency or crime committed therein.

W.Va. Code § 49-7-101.

## IV. Conclusion

For the reasons set forth herein, this Court reverses the circuit court's appointment of the grandmother, A.H., as guardian and remands for the appointment of E.B. as the child's guardian.[10]

Reversed and Remanded with Directions

---

[10]This Court appreciates the diligence of the guardian ad litem in her zealous advocacy on behalf of this child. We are also grateful to Ms. Bias for her representation of the father's interests in this appeal.

16