**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

**FILED**

**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**IN RE: G.T. and K.T., minors**

**No. 24-ICA-338**   (Cir. Ct. of Jefferson Cnty. No. CC-19-2017-CIG-4)

**MEMORANDUM DECISION**

Petitioner Johnte F.[1] ("Father") appeals the Circuit Court of Jefferson County's July 26, 2024, order denying his motion to terminate the infant guardianship of G.T.[2] The guardian ad litem ("GAL") filed a response in support of the circuit court's order.[3] Respondents Angelita P. ("Grandmother") and Chelsea T. ("Mother") did not participate in this appeal. Father did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no abuse of discretion. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

G.T. was born to Father and Mother in 2016. Grandmother is G.T.'s maternal grandparent. At the time of G.T.'s birth, Mother, G.T.'s half-siblings, and their fathers were the subject of a pending abuse and neglect proceeding, which was filed in the Circuit Court of Jefferson County in 2015. Grandmother, who was the legal guardian for one of G.T.'s half-siblings, was named as a non-offending respondent. The abuse and neglect petition was amended to add G.T. and Father as respondents. Father was later determined to be a non-offending parent. At some point during the abuse and neglect case, Mother voluntarily relinquished her parental and custodial rights to G.T.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.,* 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n.1 (1990).

[2] K.T. was named in the underlying guardianship petition; however, K.T. is not Father's child and was not subject to his motion to terminate Grandmother's guardianship.

[3] On appeal, Father is represented by Scott Curnutte, Esq., who filed the briefs but was suspended from the practice of law by order of the Supreme Court of Appeals of West Virginia dated July 8, 2025. The GAL is Susan MacDonald, Esq.

Grandmother filed the underlying guardianship petition on May 18, 2017, seeking legal guardianship of G.T. *See generally,* W. Va. Code § 44-10-3 (2013). Thereafter, a hearing was held on May 23, 2017, which neither Father nor Grandmother attended. The May 23, 2017, hearing was memorialized by an order entered on June 21, 2017. According to that order, the circuit court addressed Grandmother's petition and noted that the parties agreed that the appointment of Grandmother as G.T.'s guardian was the appropriate permanency plan for the child, and that it was in G.T.'s best interests to be placed with her other siblings who were in Grandmother's home pursuant to separate legal guardianship orders. However, because Father and Grandmother were not present, the circuit court continued the hearing until June 21, 2017, to ensure that the permanency and guardianship matters were properly noticed, and that the parties had the opportunity to be heard.

The June 21, 2017, hearing proceeded as scheduled and Grandmother appeared, but Father did not. Following this hearing, the circuit court entered two separate orders. The first order, entered on June 21, 2017, granted Grandmother's petition and named her G.T.'s legal guardian ("Guardianship Order").[4] The Guardianship Order contained language which noted that Father could file a motion to modify guardianship in the future and would be required to show that there had been a substantial change in circumstances and that modification was in the child's best interest. The second order, which addressed G.T.'s permanency plan in the abuse and neglect case, was entered on June 26, 2017 ("Permanency Order"). In the Permanency Order, the circuit court found that the permanency plan of legal guardianship with Grandmother was in G.T.'s best interest; Father had been properly served but did not appear; and that no party objected to Grandmother's petition. The Permanency Order directed that any visitation between G.T. and her parents would be at Grandmother's sole discretion. It further directed that the abuse and neglect case was closed and removed from the court's active docket. Father did not appeal either order.

On June 21, 2024, Father filed a pro se motion to terminate Grandmother's guardianship. In support, the motion stated "[G.T.] has been residing with me. [Grandmother] no longer provides her care. She will be attending Ranson Elementary School." Prior to hearing the matter, the circuit court appointed a GAL to investigate the matter and prepare a report containing her findings and recommendations. The GAL Report ("Report") was filed with the court on July 20, 2024. Among the findings detailed in the Report, the GAL found that since the Guardianship Order was entered in 2017, Grandmother had permitted contact between G.T. and her parents, and as part of the contact, G.T. had been residing intermittently between Mother's and Father's separate homes. Grandmother acknowledged that since June 2022 she had permitted G.T. to live full-time with Mother in a home adjacent to Grandmother's residence. The Report also contained details surrounding Father's September 2022 arrest in Washington, D.C., on

---

[4] The Guardianship Order consisted of the circuit court completing the infant guardianship form order promulgated by our Supreme Court of Appeals.

child abduction charges after Father did not return G.T. to Grandmother in West Virginia after a planned visitation. Based upon Father's representations to the GAL, those charges were resolved pursuant to a plea agreement, with Father receiving probation and credit for time served. Father also disclosed to the GAL that he was in federal custody from September 19, 2022, through January 2, 2024.[5] The GAL recommended that the circuit court deny Father's motion and that G.T. remain in legal guardianship with Grandmother.

The circuit court heard Father's motion on July 23, 2024, with Father, Mother, Grandmother, and the GAL all appearing. At the onset of the hearing, the circuit court noted that after reviewing Father's motion and supporting documentation, the orders entered in both the guardianship and abuse and neglect proceedings, the Report, and letters written by nonparties, it was inclined to deny the motion because it could not find any basis upon which the termination of Grandmother's guardianship would be in G.T.'s best interest. To that end, the court noted that G.T. was eight years old and had been placed with Grandmother since she was seven months old, and that Father's incarceration between 2022 to 2024 could not support a finding that a substantial father-child bond had developed which would justify granting him custody and terminating Grandmother's guardianship. Despite its initial stance, the court then permitted the parties to proffer their positions and objections to Father's motion.

Father explained to the Court that he was told by his former counsel to agree to the guardianship so that Grandmother could take the child to live with her in Florida, and that it was never his intention for Grandmother to have permanent guardianship of his child. Father also explained to the court that G.T. had not been living with Grandmother for a significant period of time, but rather, the child had spent time living between both parents. On this issue, Father claimed that G.T. lived with him from 2018 until 2022 when he got arrested on the child abduction charges and was then incarcerated for several months. Father also noted that G.T. was currently living with Mother outside of Grandmother's home. Mother corroborated Father's representations that G.T. had been living between their separate homes. The circuit court admonished the parties, explaining that such conduct was in violation of the Guardianship Order. Grandmother then addressed the circuit court. She told the court that G.T. lived with her full-time from 2017 until 2022, and during that time she permitted the parents to visit the child. However, when G.T. became school-age, she permitted Mother to assume parental responsibilities for G.T. which she thought she was allowed to do as the child's legal guardian. Grandmother then apologized to the circuit court for not completely understanding her role as G.T.'s guardian and promised that she would strictly abide by any terms set forth by the court.

---

[5] The circumstances surrounding Father's entire period of incarceration are unclear from the record. Based upon the differing information in the record, it appears that Father's incarceration was a combination of the child abduction charges, outstanding warrants, and probation violation(s) for other charges. Nevertheless, the length of Father's incarceration was undisputed below.

After hearing the parties' positions, the circuit court stated that it was still denying Father's motion, finding that nothing in the record supported a determination that it was in G.T.'s best interest to disrupt her current placement with Grandmother. Instead, the court found that the parties' actions violated the Guardianship Order, and expressly found that Father's representations to the court were contrary to the record and he lacked credibility. The court reiterated to the parties that Mother's parental and custodial rights had been terminated and, as a result, she was no longer entitled to custody of G.T. It was further noted that Father did not have custody of G.T., but rather, pursuant to the Guardianship Order, the child was solely in Grandmother's legal and physical custody, and that it was Grandmother's responsibility to provide for the child's needs. The circuit court also clarified that while its prior rulings granted Grandmother the discretion to permit contact between G.T. and her parents, that discretion extended only to short-term visitation, and did not permit either parent to assume custody of G.T. The parties were ordered to immediately return G.T. to Grandmother's custody.

Thereafter, the circuit court directed the GAL to continue to monitor the case and set the matter for review in six months. The court's rulings were memorialized in its July 26, 2024, order, which is now before us on appeal. Notably, according to a status update provided by the GAL's response brief, G.T. remains placed with Grandmother and is doing exceptionally well. However, the GAL reported that Father has not seen G.T. since prior to the July 23, 2024, hearing, and that he has refused Grandmother's attempts to facilitate visitation.

In this appeal, we apply the following standard of review:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

Syl. Pts. 1 and 2, *In re Guardianship of A.C.*, 240 W. Va. 23, 807 S.E.2d 271 (2017) (cleaned up).

On appeal, Father's lone assignment of error is that he was denied a meaningful opportunity to be heard. Here, Father contends that the circuit court denied his motion without conducting a proper evidentiary hearing and, thus, he was prevented from

4

presenting evidence to satisfy his burden of proof. *See* W. Va. Code § 44-10-3(j).[6] To that end, Father asserts that a true evidentiary hearing would have shown that G.T. was no longer living with Grandmother, and that there was a significant father-child bond. Additionally, Father asserts that he was not provided a copy of the Report prior to the July 23, 2024, hearing and, as a result, he was not provided adequate opportunity to contest the Report's findings. We are not persuaded by any of Father's arguments.

To begin, we conclude that to the extent Father raises challenges or issues regarding the circumstances surrounding the circuit court's entry of the Guardianship Order in 2017, those matters were not timely appealed by Father and are now time barred.

We also decline to address Father's argument regarding the GAL Report. There is no indication from the record that Father sufficiently preserved an objection on this issue for appeal. As this Court has previously stated, "While our law does not require a party to use boilerplate language to preserve an objection, it does require that: 'To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. Syl. Pt. 2, *Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996).'" *Booker v. Woodside*, No. 24-ICA-280, 2025 WL 1249490, at *5 (W. Va. Ct. App. Apr. 29, 2025) (memorandum decision); *see also Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citations and quotations omitted) ("Our general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered."); *PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (Ct. App. 2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal). In this case, the hearing transcript shows that Father neither advised the circuit court that he did not receive the Report, nor did he object to proceeding and seek a continuance to allow him to adequately prepare to challenge the Report's findings. Therefore, the issue was not properly articulated or otherwise preserved for appellate review.

Lastly, we find no merit in Father's contention that he was denied the opportunity to be heard at the July 23, 2024, hearing. While we believe the matter could have been better served by the circuit court conducting a full evidentiary hearing, under the limited scope of this case, we cannot conclude that the circuit court's ruling was an abuse of discretion or resulted in prejudicial error. At best, any error by the circuit court was harmless. *See Orphanos v. Rodgers*, 250 W. Va. 442, 461, 903 S.E.2d 623, 642 (Ct. App.

---

[6] West Virginia Code § 44-10-3(j) provides:

> For a petition to revoke or terminate a guardianship filed by a parent, the burden of proof is on the moving party to show by a preponderance of the evidence that there has been a material change of circumstances and that a revocation or termination is in the child's best interest.

2024) (quoting *Reed v. Wimmer*, 195 W. Va. 199, 209, 465 S.E.2d 199, 209 (1995) ("Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no ways affects the outcome of the trial.").

First, while Father complains about how the hearing was conducted, there is no indication from the hearing transcript that Father objected to the hearing taking place or the manner in which it was conducted. As we previously noted, objections must be sufficiently made below to preserve an issue for appeal. Here, Father did not make a proper objection to preserve this issue for appellate review.

Moreover, even if Father articulated a proper objection, we find no basis upon which to disturb the circuit court's decision. Other than generally stating that a full evidentiary hearing would have provided him the opportunity to present his evidence and meet his burden of proof, outside of the facts that he proffered to the circuit court, Father's brief does not set forth what new or specific evidence he would have introduced, let alone how such evidence would have resulted in the circuit court ruling in his favor.

Instead, the record shows that even though the circuit court informed the parties at the outset of the hearing that it was inclined to deny Father's motion because it did not appear to be in the child's best interest, the court nevertheless afforded the parties the opportunity to state their positions and any objections to the motion on the record. According to the hearing transcript, the majority of the hearing was spent with Father stating his position and salient facts to the court. After hearing Father's averment, the circuit court found that he was not credible. The circuit court's credibility determination is beyond reproach on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citation omitted) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations[,] and this Court is not in a position to, and will not, second guess such determinations."); *Vogt v. Macy's, Inc.*, No. 22-ICA-162, 2023 WL 4027501, at *6 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (declining to disturb credibility determinations on appeal).

More importantly, the circuit court found that the termination of Grandmother's guardianship was not in G.T.'s best interest. "[P]arental rights must sometimes yield in situations where they are in conflict with the best interests of the child[.]" *In re Adoption of J.S. and K.S.*, 245 W. Va. 164, 170, 858 S.E.2d 214, 220 (2021). "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996). "'[T]he best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.,* 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989)." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011). Here, because the record

establishes that the circuit court's ultimate determination was predicated upon the best interests of G.T., we cannot conclude that the circuit court erred in its decision.

Accordingly, we affirm the circuit court's July 26, 2024, order.[7]

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Judge Daniel W. Greear
Judge S. Ryan White

Chief Judge Charles O. Lorensen, not participating.

---

[7] We note that Father is not precluded from filing future petitions regarding G.T.'s guardianship. Thus, should Father attempt to modify his child's guardianship in the future, along with the statutory factors for a modification, we encourage the circuit court to consider the rationale and guidance espoused in our recent decisions of *In re W.S.*, No. 24-ICA-335, 2025 WL 1651971 (W. Va. Ct. App. June 11, 2025) (memorandum decision) and *In re P.S.*, No. 24-ICA-179, 2025 WL 1662732 (W. Va. Ct. App. June 12, 2025) (memorandum decision).